An order may be, therefore, entered setting aside the verdict rendered and granting a new trial, with cost to abide the event.

Ordered accordingly.

---

EDWARD T. PLATT, as Treasurer, Etc., Plaintiff, v. FREDERICK S. FLOWER et al., Defendants.

(Supreme Court, New York Trial Term, February, 1910.)

Landlord and tenant — Rights, duties and liabilities in regard to premises — Incumbrances, taxes and assessments — Covenants and agreements as to taxes and assessments.
Municipal corporations — Taxation and water rents — In general — Fiscal year.

In the city of New York, the fiscal year is coincident with the calendar year and the annual tax which becomes a lien on real estate in said city on the first Monday of October is for the current calendar year.

And where a tenant who has agreed to pay all taxes during his term sublets to a subtenant, who agrees that the taxes payable on the first Monday of October shall be apportioned between the parties as of the day when possession shall be delivered under the sublease, the subtenant is liable for the proportionat₃ amount of the taxes due to that part of the calendar year subsequent to the delivery to him of possession.

ACTION upon a lease.

B. P. Kerfoot, for plaintiff.

S. S. Phillips, for defendants.

GREENBAUM, J.　The plaintiff association was the lessee of the premises No. 49 Broadway, in the borough of Manhattan, city of New York, under a certain indenture of lease entered into between it and one Edmund Randolph Robinson as trustee, on the 20th of December, 1908. This lease provided *inter alia* that the lessee should pay " all such duties, taxes, assessments and payments * * * as shall, during the term hereby demised, be assessed, imposed or become a lien or charge on * * * said demised premises." On January 16, 1907, by an instrument in writing, the plaintiff assigned the unexpired term of said lease to Flower & Co. The assignment provided that the assignee should assume from the date of delivery of possession of the premises all obligations and covenants in said original lease contained. By a further independent collateral agreement Flower & Co. also promised to pay to the plaintiff, in addition to the rent reserved in the lease, the sum of $416.66 upon the last day of each month during the balance of the term assigned. The assignment also contained the further provision out of which the present controversy arises, which reads as follows: " It being further understood and agreed that the taxes payable on the first Monday of October, 1907, shall be apportioned between the party of the first part and the party of the second part as of the day when possession shall be delivered as aforesaid and paid by said parties accordingly." Possession of the premises was delivered to the

assignee on January 28, 1907. The defendants, who are the successors of the assignee, Flower & Co., admit that they have failed to pay installments fixed by the terms of the collateral agreement amounting in all to the sum of $1,666.64, but set up as a counterclaim thereto the sum of $1,282.99, which they claim to be due from the plaintiff under the provision in the assignment referred to as its proportionate part of the taxes amounting to $3,935.22, which became a lien upon the premises on the first Monday of October, 1907. The plaintiff contends that the payment of the tax on the first Monday of October, 1907, covered the period embraced in that calendar year and that its liability is limited to that fractional part of the tax represented by the period from January 1 to January 28, 1907, or 28-365 of the total amount paid. The defendants contend, on the other hand, that the payment of the tax in question was for what they claim to be the fiscal or taxable year, beginning the first Monday of October, 1906, and ending the first Monday of October, 1907, and that under this interpretation plaintiff is liable for that portion of the tax for the period intervening October 1, 1906, and January 28, 1907, or 119-365 of the total amount paid. Defendants also argue that, conceding the correctness of plaintiff's contention, that the fiscal year and calendar year are the same, the principle of the apportionment that the parties intended to adopt is still left in doubt by the language of the provision in question, and that parol evidence of the intention of the parties should have been received upon the trial. I am of the opinion that the period covered by the payment of the tax is clearly and unmistakably defined by various sections of the Greater New York Charter relating to and which outline the statutory scheme for the raising, collection and payment of the annual expenses for conducting the business of the city of New York. In construing the language of the assignment the provisions of the charter affecting this question must be read into the agreement with the same effect as if set forth at length therein. Turning to the charter provisions we find that the board of estimate and apportionment is directed to meet between October first and November first to make up a

budget of amounts required to pay the expenses of conducting the public business of the city for the *next ensuing year* (§ 226). Section 249 directs that the aggregate amount of this annual budget as finally adopted be certified by the comptroller to the board of aldermen, who are required to cause to be raised and collected the amount so certified. By section 907 it is provided that, beginning with the first day of April, the annual record of assessed valuations of real and personal estate shall be delivered to the board of aldermen, who are directed by section 909 to thereafter compute and fix the taxes annually imposed and extend the same in the several assessment-rolls or tax books, and after completion thereof and after execution of the proper warrants to deliver the same to the receiver of taxes for collection. The taxes so imposed are made payable and become a lien upon the real estate affected thereby on the first Monday of October following (§ 914). It is, therefore, clear that it is the amount of the budget made up for the ensuing year that is raised and collected in the form of taxes, and the mere fact that such taxes become a lien and are payable the first Monday of October cannot alter or affect the plain language of the statutes fixing the period for which the tax is paid. There are numerous other provisions of the charter, among which may be mentioned sections 9, 10, 161, 195, 237 and 248, all of which confirm the fact that the fiscal year of the city of New York is coincident with the calendar year, and I have been unable to find anything in the charter provisions that points to a different conclusion. Further support for these views is found in section 57 of the General Construction Law (Laws of 1909, chap. 27), where the word "year" when used in a public statute is defined as meaning a period of 365 days, while from the first Monday of October to the first Monday of October following is a variable period, amounting in the present instance to 371 days. If the parties in fact agreed that the tax should be apportioned for the period embraced between the first Monday of October, 1906, and the first Monday of October, 1907, and the instrument does not express their true intention, then it may be that the defendant's remedy would be found in an action to reform

the agreement to conform it to the intention of the parties, but this relief cannot be granted to the defendant in this action without violating the principle that prohibits the reception of parol evidence to contradict or vary the terms of a valid written instrument. Evans v. Meyers, 25 Penn. St. 114. See also Security Bank v. Nat. Bank of Republic, 67 N. Y. 458. The plaintiff is, therefore, entitled to judgment for the sum demanded in the complaint, with costs, less the sum of $301.80, with interest thereon from the 7th day of October, 1907, the conceded portion of the tax due from the plaintiff.

Judgment accordingly.